IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | |
| UTILISOUTH, INC.; ZAYO GROUP, LLC; ATLANTIC CONSTRUCTION SERVICES, LLC; G&S DRILLING COMPANY, INC.; and JEROME CRAWL, | Civil Action File No. _____ |
| Defendants. | |

## AUTO-OWNERS INSURANCE COMPANY'S
## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW AUTO-OWNERS INSURANCE COMPANY ("Auto-Owners") and hereby files its Complaint for Declaratory Judgment against UtiliSouth, Inc. ("UI"), Zayo Group, LLC ("Zayo"), Atlantic Construction Services, LLC ("ACS"), G&S Drilling Company, Inc. ("G&S"), and Jerome Crawl ("Crawl"), showing this Honorable Court as follows:

## PARTIES

1.

Auto-Owners is a corporation organized and existing under the laws of the State of Michigan with its principal place of business in Michigan.

2.

Defendant UI is a corporation organized and existing under the laws of the State of Georgia with its principal place of business in Georgia. Defendant UI may be served with process via its registered agent, James P. Keck, at 1897 Beaverdale Rd. NE, Dalton, GA, 30721.

3.

Defendant Zayo is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Colorado. Defendant Zayo has a single member, James Simonelli, who is a resident and domiciliary of Colorado, and who has the present intention to remain in Colorado and call Colorado his home. Defendant Zayo may be served via its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

4.

Defendant ACS is a limited liability company organized under the laws of the State of Georgia with its principal place of business in Georgia. Defendant ACS has a single member, James Salter, who is a resident and domiciliary of Georgia, and who has the present intention to remain in Georgia and call Georgia his home. Defendant ACS may be served via its registered agent, James Salter, at 4465 Commerce Dr., Ste 101, Buford, GA, 30518.

5.

Defendant G&S is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business in Tennessee. Defendant G&S may be served with process via its registered agent, Sean Sneed, at 629 County House Rd., Rutledge, TN 37861.

6.

Defendant Crawl is a resident and domiciliary of the State of Georgia, and he has the present intention to remain in Georgia and call Georgia his home. Defendant Crawl may be served personally at 4837 College Street, Forest Park, Georgia, or wherever he is found.

## JURISDICTION AND VENUE

7.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states, who are completely diverse, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.

This Court has personal jurisdiction over the Defendants because the Underlying Lawsuit and Third-Party Complaint (defined below) are pending in the Superior Court of Gwinnett County, Georgia, which lies within this judicial district and division of the Court. Moreover, the circumstances serving as the basis for the Underlying Lawsuit occurred within this judicial district and division of the Court.

9.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## **NATURE OF ACTION**

10.

This is a Complaint for Declaratory Judgment, brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Auto-Owners and the Defendants.

11.

A controversy of a judicial nature presently exists among the parties that demands a declaration by this Court in order that Auto-Owners may have its rights and duties under the relevant contract of insurance determined and avoid the possible accrual of damages.

12.

Each Defendant named herein has been joined in compliance with case law requiring the insurer seeking a declaratory judgment to bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through the declaratory judgment.

## THE INCIDENT

13.

On or around December 4, 2015, Defendant G&S allegedly trespassed upon Defendant Crawl's private property, located at 4837 College Street, Forest Park, Georgia (the "Property"), by boring beneath it for the purpose installing fiber optic cable lines pursuant to the Clayton County Fiber Project.

14.

As Defendant G&S was boring beneath the Property, it allegedly ruptured an underground sanitary sewer line that services the Property, allegedly causing raw sewage damage on the Property (the "Incident").

15.

At the time of the Incident, Defendant G&S was a subcontractor for Defendant UI.

16.

At the time of the Incident, Defendant UI was a subcontractor for Defendant ACS, the general contractor for Zayo.

## THE UNDERLYING LAWSUIT

17.

On November 26, 2019, Defendant Crawl filed a lawsuit arising from the Incident against Defendants ACS[1], Zayo, and G&S in the Superior Court of Clayton County, CAFN 2019CV04482-10, which was later transferred to the Superior Court of Gwinnett County, CAFN 20-A-01484-6 (the "Underlying Lawsuit"). True and accurate copies of the Underlying Lawsuit, the order on the joint motion to substitute, and the order of transfer are attached hereto as **Exhibit A**.

18.

In the Underlying Lawsuit, Defendant Crawl alleges that Defendants ACS, Zayo, and G&S caused the Incident and all resulting damages.

---

[1]     Defendant ACS was originally named as Atlantic Engineering Group, Inc. However, Atlantic Engineering Group, Inc., a separate and distinct entity, was later dropped, and Defendant ACS added, to the Underlying Lawsuit through a joint motion to substitute.

19.

On or about December 30, 2020, Defendant ACS filed a third-party complaint against Defendant UI in the Underlying Lawsuit (the "Third-Party Complaint"). A true and accurate copy of the Third-Party Complaint is attached hereto as **Exhibit B**.

20.

In the Third-Party Complaint, Defendant ACS alleges that Defendant UI breached the parties' subcontract by failing to provide it with a defense and an indemnity with respect to the Underlying Lawsuit.

21.

Specifically, the Third-Party Complaint alleges that Defendant UI breached the parties' subcontract by failing to both (1) defend ACS and Zayo against the Underlying Lawsuit and (2) indemnify them for attorney's fees incurred in their defense against the Underlying Lawsuit.

## THE INSURANCE CONTRACTS

### 22.

Auto-Owners issued a commercial general liability insurance policy to "G&S Drilling Inc.," policy number 024619-03161960, with an effective policy period from November 6, 2015 to November 6, 2016 (the "Primary Policy"). A true and accurate copy of the Primary Policy is attached hereto as **Exhibit C**.

### 23.

The Primary Policy's commercial general liability coverage contains the following relevant definitions, terms, provisions, and conditions:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

> **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. . . .

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

> **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" [and]
>
> **(2)**    The "bodily injury" and "property damage" occurs during the policy period.

.   .   .

**2.**    **Exclusions**

This insurance does not apply to:

.   .   .

**b.**    **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

.   .   .

## COVERAGE B.  PERSONAL INJURY AND ADVERTISING INJURY LIABILITY

**1.**     **Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or offense and settle any claim or "suit" that may result. . . .

  **b.** This insurance applies to "personal injury" and "advertising injury" only if:

    **(1)** The "personal injury" or "advertising injury" is caused by an offense arising out of your business; and

    **(2)** The offense causing the "personal injury" or "advertising injury" was committed in the "coverage territory" during the policy period.

      .   .   .

**2.**     **Exclusions**

  This insurance does not apply to "personal injury" or "advertising injury":

      .   .   .

- 11 -

     **e.**     **Contractual Liability**

        For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

     **f.**     **Breach of Contract**

        Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

.  .  .

## SECTION II – WHO IS AN INSURED

**1.**     Each of the following is an insured with respect to this coverage:

     **a.**     You;

.  .  .

## SECTION IV.    COMMERCIAL    GENERAL    LIABILITY CONDITIONS

.  .  .

**2.**     **Duties In The Event Of Occurrence, Claim Or Suit**

.  .  .

     **c.**     You and any other involved insured must:

.   .   .

**(3)**   Cooperate with us in the investigation or settlement of any claim or defense of any "suit"[.] . . .

.   .   .

**3.**   **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.**   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.**   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.   .   .   .

**SECTION V – DEFINITIONS**
.   .   .

**2.**   "Advertising injury" means injury arising out of one or more of the following offenses:

- 13 -

    **a.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your "advertisement";

    **b.**    Oral or written publication, in any manner, of material that violates a person's right of privacy in your "advertisement";

    **c.**    The use of another's advertising idea in your "advertisement"; or

    **d.**    Infringing upon another's copyright, "trade dress" or slogan in your "advertisement".

.  .  .

**4.**    "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.

.  .  .

**14.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15.**    "Personal injury" means other than "bodily injury" arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    **e.**      Oral or written publication, in any manner, of material that violates a person's right of privacy; or

    **f.**      Discrimination, humiliation, sexual harassment and any violation of civil rights caused by such discrimination, humiliation or sexual harassment.

.   .   .

**18.**    "Property damage" means:

    **a.**      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**      Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it. . . .

- 15 -

**21.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.**    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

.   .   .

## ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Name of Person or Organization (Additional Insured):**

.   .   .

UTILISOUTH INC

.   .   .

A.   Under **SECTION II - WHO IS AN INSURED**, the following is added:

The person or organization shown in the above Schedule is an Additional Insured, but only with respect to liability arising out of "your work" for that insured by or for you.

.   .   .   .

*See* Primary Policy, Commercial General Liability Coverage Form (Form No. 55300 (7-05)); Primary Policy, Commercial General Liability Plus Endorsement (Form No. 55091 (10-08)); Primary Policy, Additional Insured Endorsement (Form No. 55205 (12-04)).

24.

Auto-Owners also issued a commercial umbrella insurance policy to "G&S Drilling Inc.," policy number 42-333-054-02, with an effective policy period from November 6, 2016 to November 6, 2017 (the "Umbrella Policy") (together with the Primary Policy, the "Policies"). A true and accurate copy of the Umbrella Policy is attached hereto as **Exhibit D**.

25.

The Umbrella Policy's insurance coverage contains the following relevant definitions, terms, provisions, and conditions:

## COMMERCIAL UMBRELLA POLICY

### INSURING AGREEMENT

**We** agree to provide insurance relying on the statements in the Declarations and subject to all the terms and conditions of this policy. In return, **you** must pay the premium and comply with all policy terms and conditions.

### DEFINITIONS

.  .  .

B.   **Advertising injury** means injury arising out of one or more of the following offenses:

  1.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in **your advertisement**;

  2.   Oral or written publication, in any manner, of material that violates a person's right of privacy in **your advertisement**;

  3.   The use of another's advertising idea in **your advertisement**; or

  4.   Infringing upon another's copyright, **trade dress** or slogan in **your advertisement**.

.  .  .

E.   **Bodily injury** means bodily injury, bodily sickness or bodily disease

- 18 -

sustained by a person, including death resulting from any of these at any time.

.   .   .

**I.**     **Incident** means either an occurrence or an offense, whichever is the basis of coverage, then:

    **1.**     When coverage applies on an occurrence basis, **incident** means an accident with respect to:

        **a.**     **Bodily injury**, including damages claimed by any person or organization for care, loss of services or death resulting at anytime from the **bodily injury**; or

        **b.**     **Property damage**
including continuous or repeated exposure to substantially the same general harmful conditions. Continuous or repeated exposure to substantially the same general harmful conditions constitutes one **incident**.

    **2.**     When coverage applies on an offense basis, **incident** means an offense committed by the **insured** resulting in **personal injury** or **advertising injury**, including all such injury sustained by any one person or organization.

**J.**     **Insured** means the person(s) or organization(s) qualifying as such under the **PERSONS AND ORGANIZATIONS INSURED** section of this policy.

.   .   .

**L.**     **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses:

    **1.**     False arrest, detention or imprisonment;

- 19 -

**2.**     Malicious prosecution;

**3.**     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises, that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**4.**     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**5.**     Oral or written publication of material, in any manner, that violates a person's right to privacy; or

**6.**     Discrimination or humiliation.

.   .   .

**P.**     **Property damage** means:

**1.**     Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical injury that caused the loss of use.

**2.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the incident that caused the loss of use. . . .

**R.**     **Scheduled underlying insurance** means the insurance policies shown in the Schedule of Underlying Insurance including any renewal or replacement of such contracts which are not more restrictive.

.   .   .

U.   **Suit** means a civil proceeding in which damages because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies are alleged. **Suit** includes:

   1.   An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or does submit with **our** consent; or

   2.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

.   .   .

CC.   **We**, **us** and **our** means the Company providing this insurance.

DD.   **You** and **your** means the person(s) or organization(s) shown as the Named **Insured** in the Declarations.

.   .   .

## COVERAGE

A.   **We** will pay those sums included in **ultimate net loss** that the **insured** becomes legally obligated to pay as damages because of:

   1.   **Bodily injury;**

   2.   **Property damage;**

   3.   **Personal injury;** or

   4.   **Advertising injury**

to which this insurance applies caused by an **incident**.

**B.**     If the basis for coverage for an **incident** is:

    **1.**     An occurrence:

        **a.**     The **bodily injury** and **property damage** must take place during the policy term[.]

. . .

    **2.**     An offense:

        **a.**     The **personal injury** and **advertising injury** must be committed during the policy term[.]

. . .

## EXCLUSIONS

This policy does not apply to:

. . .

**Q.**     Bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

. . .

**S.**     **Personal injury** or **advertising injury**:

. . .

    **4.**     For which the **insured** has assumed liability in a contract or agreement.

. . .

**W.**    Personal injury or advertising injury arising out of any incident first committed before the beginning of the policy term.

.  .  .

**CC.**   **Advertising injury** arising out of:

     **1.**    A breach of contract, except an implied contract to use another's advertising idea in your advertisement.

.  .  .

## DEFENSE AND SETTLEMENT PAYMENTS

**When Underlying Insurance Does Not Apply To An Incident**

When **underlying insurance** does not apply to an **incident** which is covered by this policy, **we** have the right and duty to defend any **suit** against the **insured** seeking damages on account of **bodily injury**, **property damage**, **personal injury** or **advertising injury**. **We** may investigate and settle any claim or **suit** at **our** discretion . . . .

.  .  .

## CONDITIONS

This policy is subject to the following conditions:

.  .  .

**F.**    **Legal Action Against Us**

    **We** may not be sued unless:

     **1.**    There is full compliance with all the terms of this policy; and

**2.**      Until the obligation of an **insured** to pay is finally determined either by:

      **a.**      Judgment against the **insured** after actual trial; or

      **b.**      By written agreement of the **insured**, the claimant and **us**.

No one shall have any right to make us a party to a **suit** to determine the liability of an **insured**.

.   .   .

**H.      Notice of Incident, Claim or Suit**

.   .   .

**3.**      The **insured** must:

      **c.**      Cooperate with **us** in the investigation or settlement of any claim or defense of any **suit**[.]

.   .   .   .

*See* Umbrella Policy, Commercial Umbrella Insurance (Form No. 26800 (7-05)).

## **RESERVATION OF RIGHTS**

### 26.

UI seeks a defense and indemnity under the Policies for the Third-Party Complaint filed against it. In response, Auto-Owners issued a letter to Defendant UI

- 24 -

wherein Auto-Owners provided notice of its reservation of rights to disclaim any obligation under the Policies and to assert the defense of non-coverage. A true and accurate copy of the relevant reservation of rights letter is attached hereto as **Exhibit E**.

27.

Further, after receiving notice of the Third-Party Complaint, Auto-Owners retained counsel to defend Defendant UI against the Third-Party Complaint, subject to the full reservation of rights letter.

28.

For the reasons set forth below, however, questions exist as to whether the Policies afford any coverage for the claims alleged in the Third-Party Complaint and whether Auto-Owners has any duty to defend or indemnify Defendant UI against the Third-Party Complaint.

## DECLARATORY JUDGMENT

### COUNT I
### AUTO-OWNERS HAS NO DUTY TO
### DEFEND OR INDEMNIFY DEFENDANT UI AGAINST
### THE THIRD-PARTY COMPLAINT BECAUSE IT DOES NOT
### ALLEGE ANY COVERED INJURY OR DAMAGES.

29.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

30.

The Policies issued by Auto-Owners afford coverage only for "sums that" Defendant UI is "legally obligated to pay because of" certain defined injuries, namely "bodily injury," "property damage," "personal injury," and "advertising injury."

31.

The Third-Party Complaint filed in the Underlying Lawsuit, however, only asserts claims for breach of contract, and not "bodily injury," "property damage," "personal injury," or "advertising injury."

32.

Specifically, the Third-Party Complaint alleges that Defendant UI breached its subcontract with Defendant ACS by failing to both (1) defend ACS and Zayo against the Underlying Lawsuit and (2) indemnify them for attorney's fees incurred in their defense against the Underlying Lawsuit.

33.

The Third-Party Complaint, therefore, does not allege any "sums that" Defendant UI is "legally obligated to pay because of" "bodily injury," "property damage," "personal injury," or "advertising injury."

34.

Consequently, because the Third-Party Complaint does not allege any "sums that" Defendant UI is "legally obligated to pay because of" "bodily injury," "property damage," "personal injury," or "advertising injury," Auto-Owners should have no duty to defend or indemnify Defendant UI under the Policies in connection with the Third-Party Complaint.

35.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Defendant UI under the Policies against any liability, judgment, or settlement resulting from the Third-Party Complaint.

**COUNT II**
**AUTO-OWNERS HAS NO DUTY TO**
**DEFEND OR INDEMNIFY DEFENDANT UI AGAINST**
**THE THIRD-PARTY COMPLAINT BECAUSE IT DOES NOT**
**ALLEGE AN "OCCURRENCE" AS DEFINED BY THE POLICIES.**

36.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

37.

The Policies issued by Auto-Owners afford coverage only for "sums that Defendant UI is "legally obligated to pay because of" certain defined injuries that are caused by an "occurrence," or an accident.

38.

The Third-Party Complaint filed in the Underlying Lawsuit, however, only asserts claims for breach of contract, not any claims arising from or damages caused by an "occurrence," or an accident.

39.

Specifically, the Third-Party Complaint alleges that Defendant UI breached its subcontract with Defendant ACS by failing to both (1) defend ACS and Zayo against the Underlying Lawsuit and (2) indemnify them for attorney's fees incurred in their defense against the Underlying Lawsuit.

40.

The Third-Party Complaint, therefore, does not allege any injuries or damages "caused by an 'occurrence,'" or an accident.

41.

Consequently, because the Third-Party Complaint does not allege any injuries or damages "caused by an 'occurrence,'" or an accident, Auto-Owners should have no duty to defend or indemnify Defendant UI under the Policies in connection with the Third-Party Complaint.

42.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Defendant UI under the Policies against any liability, judgment, or settlement resulting from the Third-Party Complaint.

**COUNT III**
**AUTO-OWNERS HAS NO DUTY TO**
**DEFEND OR INDEMNIFY DEFENDANT UI AGAINST THE THIRD-PARTY COMPLAINT UNDER THE UMBRELLA POLICY BECAUSE IT DOES NOT ALLEGE AN OCCURRENCE OR OFFENSE THAT TOOK PLACE DURING THE UMBRELLA POLICY'S TERM.**

43.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

44.

The Umbrella Policy issued by Auto-Owners only provides coverage for an occurrence or offense if such occurrence "take[s] place during the policy term" or such offense is "committed during the policy term."

45.

Moreover, the Umbrella Policy unambiguously excludes from coverage any "personal injury" or "advertising injury" "first committed before the beginning of the policy term."

46.

To the extent the Third-Party Complaint alleges an "occurrence" or "offense," that occurrence or offense took place, if at all, on December 4, 2015, the date of the Incident.

47.

To the extent the Third-Party Complaint alleges "personal injury" or "advertising injury," that "personal injury" or "advertising injury" took place, if at all, on December 4, 2015, the date of the Incident.

48.

However, the Umbrella Policy was first issued with an effective date of November 6, 2016.

49.

Thus, the "occurrence," "offense," "personal injury," or "advertising injury," if any, took place prior to the Umbrella Policy's term.

50.

Consequently, because the "occurrence," "offense," "personal injury," or "advertising injury," if any, took place prior to the Umbrella Policy's term, Auto-Owners should have no duty to defend or indemnify Defendant UI under the Umbrella Policy in connection with the Third-Party Complaint.

51.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Defendant UI under the Umbrella Policy against any liability, judgment, or settlement resulting from the Third-Party Complaint.

**COUNT IV**
**AUTO-OWNERS HAS NO DUTY TO**
**DEFEND OR INDEMNIFY DEFENDANT UI AGAINST THE THIRD-**
**PARTY COMPLAINT BECAUSE THE POLICIES UNAMBIGUOUSLY**
**<u>EXCLUDE A BREACH OF CONTRACT FROM COVERAGE.</u>**

52.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

- 32 -

53.

The Policies issued by Auto-Owners unambiguously exclude from coverage damages for which the insured has assumed liability in a contract or agreement, or which otherwise arise out of a breach of contract.

54.

The Third-Party Complaint alleges that Defendant UI breached its subcontract with Defendant ACS by failing to both (1) defend ACS and Zayo against the Underlying Lawsuit and (2) indemnify them for attorney's fees incurred in their defense against the Underlying Lawsuit.

55.

However, the Third-Party Complaint does not allege, or seek damages from Defendant UI because of, any tort liability incurred by Defendants ACS and Zayo, which was assumed by Defendant UI in any contract or agreement.

56.

Accordingly, the Third-Party Complaint's allegations are unambiguously excluded from coverage by the Policies' contractual liability exclusions.

57.

Consequently, because the Third-Party Complaint's allegations are unambiguously excluded from coverage by the Policies' contractual liability exclusions, Auto-Owners should have no duty to defend or indemnify Defendant UI under the Policies in connection with the Third-Party Complaint.

58.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Defendant UI under the Policies against any liability, judgment, or settlement resulting from the Third-Party Complaint.

**COUNT V**
**DEFENDANT UI FAILED TO COOPERATE WITH**
**AUTO-OWNERS' INVESTIGATION AND DEFENSE AGAINST THE**
**UNDERLYING LAWSUIT AND THIRD-PARTY COMPLAINT AND,**
**THUS, AUTO-OWNERS IS RELIEVED OF ANY DUTY TO DEFEND OR**
**INDEMNIFY DEFENDANT UI AGAINST SUCH MATTERS.**

59.

Auto-Owners repeats and realleges the foregoing paragraphs as if fully set forth herein.

60.

The Policies issued by Auto-Owners require its insureds to perform certain conditions precedent in the event of an "occurrence," offense, a loss, a claim, or a "suit."

61.

Specifically, as a condition precedent to coverage, and at all times relevant hereto, Defendant UI was, and continues to be, required to cooperate with Auto-Owners in the investigation and defense of any "occurrence," offense, loss, claim or "suit" alleged against it.

62.

Additionally, as a condition precedent to coverage, and at all times relevant hereto, Defendant UI was, and continues to be, required to authorize Auto-Owners to obtain pertinent information related to the investigation and defense of any "occurrence," offense, loss, claim or "suit" alleged against it.

63.

The Underlying Lawsuit was originally alleged and brought against Defendant Zayo, Defendant G&S, and Atlantic Engineering Group, Inc. ("AEG"), a separate and distinct entity from Defendant ACS.

64.

Defendant UI was not, and never has been, a party to the Underlying Lawsuit.

65.

As a consequence of being named in the Underlying Lawsuit, AEG tendered its defense against the Underlying Lawsuit to Defendant UI pursuant to an alleged subcontract between AEG and Defendant UI.

66.

Defendant UI then tendered AEG's claim and defense to Auto-Owners for purposes of having Auto-Owners defend AEG against the Underlying Lawsuit.

67.

Defendant UI also tendered its defense against the Underlying Lawsuit to Auto-Owners, despite it not being a defendant in the Underlying Lawsuit.

68.

Pursuant to Defendant UI's tender and claim under the Policies, Auto-Owners commenced its investigation of its alleged duties to AEG and Defendant UI pursuant to the Policies.

69.

As part of its investigation, Auto-Owners repeatedly requested that Defendant UI provide Auto-Owners with a copy of the purported subcontract between AEG and Defendant UI.

70.

Despite representations that such a subcontract existed, Defendant UI never provided Auto-Owners with a copy of any subcontract between AEG and Defendant UI, while at the same time never disavowing the existence of such a subcontract.

71.

Instead, Defendant UI and its representatives provided Auto-Owners with only a subcontract between Defendants ACS and UI.

72.

As a result, Auto-Owners took the position that it owed no defense or indemnity obligations to AEG.

73.

Auto-Owners also took the position that it owed no defense or indemnity obligations to Defendant UI.

74.

Unsatisfied with Auto-Owners' position, AEG and Defendants ACS and UI coordinated with Defendant Crawl to have Defendant ACS substituted for AEG in the Underlying Lawsuit.

75.

Specifically, AEG and Defendants ACS and UI entered into a joint motion to substitute with Defendant Crawl and, once substitution was made, Defendant ACS filed the Third-Party Complaint, in a concerted effort with Defendant UI, with the intent to force Auto-Owners to undertake a duty to defend and/or indemnify Defendants ACS and UI against the Underlying Lawsuit and Third-Party Complaint, respectively.

76.

By misrepresenting to Auto-Owners that a subcontract existed between AEG and Defendant UI, by refusing to provide such subcontract to Auto-Owners as part of its investigation into the circumstances of the Underlying Lawsuit and its duties under the Policies, and by coordinating together in a concerted effort in an attempt to invoke coverage under Auto-Owners' Policies where none existed, Defendant UI refused, and continues to refuse, to cooperate with Auto-Owners in the investigation of the Underlying Lawsuit, the Third-Party Complaint, and Defendant UI's claims for coverage under the Policies.

77.

By failing to cooperate with Auto-Owners in the investigation of the Underlying Lawsuit, the Third-Party Complaint, and Defendant UI's claims for coverage under the Policies, and thereby causing prejudice to Auto-Owners' ability to investigate and evaluate the pending claims, Defendant UI has breached a condition precedent to coverage set forth in the Policies.

78.

Consequently, because Defendant UI breached conditions precedent to coverage under the Policies, Auto-Owners should have no duty to defend or indemnify Defendant UI in connection with the Underlying Lawsuit or Third-Party Complaint.

79.

Auto-Owners is, therefore, entitled to a declaratory judgment that it is not under a duty to defend or indemnify Defendant UI against any liability, judgment, or settlement resulting from the Underlying Lawsuit or Third-Party Complaint.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Auto-Owners respectfully prays as follows:

(1)     that this Court declare that it does not owe any duties to defend or indemnify any Defendant with respect to the Underlying Lawsuit or Third-Party Complaint;

(2)     that judgment be entered in Auto-Owners' favor and against all Defendants;

(3)    that this Court bind each and every named party herein by said judgment;

(4)    that the Court award Auto-Owners all costs, expenses, and attorneys' fees that it is entitled to receive under federal and/or state law; and

(5)    that this Court enter an order granting such other and further relief as justice requires.

This 6th day of May, 2021.

Respectfully submitted,

KENDALL | MANDELL, LLC

 /s/ M. Brandon Howard
Michael C. Kendall
Georgia Bar No. 414030
M. Brandon Howard
Georgia Bar No. 550524
*Attorneys for Auto-Owners Ins. Co.*

3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone:   (770) 577-3559
Facsimile:    (770) 577-8113
mckendall@kendallmandell.com
mbhoward@kendallmandell.com